John **MUNROE** et al., Appellants,

v.

**CITY COUNCIL FOR the CITY OF ANCHORAGE et al., Appellees.**

**No. 2382.**

Supreme Court of Alaska.

Jan. 28, 1976.

Opinion on Rehearing March 30, 1976.

See 547 P.2d 839.

William A. Greene, Greene & Bankston, Anchorage, Gene R. Nichol, Legal Intern, for appellants.

John R. Spencer, City Atty., Richard R. Huffman, Asst. City Atty., Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

### OPINION

ERWIN, Justice.

This appeal challenges the superior court's affirmance of the Anchorage Board of Adjustment's denial of Munroe's application for a special exception to the applicable zoning ordinance for the construction of a planned unit development (PUD). Because of events which have occurred subsequent to the judgment of the superior court, this appeal has been rendered moot.

Through the center of Anchorage, the City has developed a greenbelt park system which surrounds Chester Creek and the Westchester Lagoon. This greenbelt has become the focal point of Anchorage's expanding park system and provides boating facilities, bike and ski trails, and other amenities often lacking in an urbanized environment. The neighborhood which surrounds Westchester Lagoon is a residential area comprised largely of single family dwellings, interspersed with duplexes. The area is zoned R–2D [1] under the Greater Anchorage Area Borough Zoning Ordinance.

John Munroe and Stanley Thompson owned [2] two triangular shaped pieces of land, one of which abutted Westchester Lagoon.[3] The two lots, together, contained approximately 4.61 acres of land, all of which was zoned R–2D. On April 29, 1974, pursuant to GAAB Ord. 1–69, Sec. 21–5(C)(4)(h) (*see* footnote 1) and GAAB Ord. 1–69, Sec. 21–6(M)(9),[4] Mun-

---

1. GAAB Ord. 1–69, Sec. 21–5(C). R–2; R–2A; R–2D:
   (1) R–2, R–2A and R–2D use districts are intended as urban and suburban two-family residential areas with low population densities. R–2, R–2A, and R–2D use regulations are identical, but existing dimensional differences in lot width and area are intended to be maintained. Structures and uses required to serve governmental, educational, religious, noncommercial recreational, and other needs of such areas are permitted within such districts or are permissible as Special Exceptions subject to restrictions intended to preserve and protect their residential character.
   (2) Permitted Principal Uses and Structures:
   a. Single-family dwellings.
   b. Two-family dwellings.
   c. Public, private and parochial academic elementary schools.
   d. High schools with primarily academic curriculums [sic], provided that principal access to such schools shall be directly from a street of Arterial 1 or greater designation upon the Official Streets and Highways Plan.
   e. Parks, playgrounds and playfields, municipal buildings and uses in keeping with the character and requirements of the district.
   f. Public branch libraries.
   g. Quasi-institutional houses subject to Sec. 21–6(Q).
   (3) . . .

   (4) Special Exceptions:
   .    .    .    .    .
   h. Planned unit development, in accordance with the provisions of Sec. 21–6(M)(9).

2. Mr. Munroe still owns his parcel of land; the parcel owned by Mr. Thompson was subsequently taken by the City of Anchorage in an eminent domain proceeding for park purposes.

3. The two parcels are described as Lot 33, Block 32 and Tract A, Block 46, both of the South Addition to the Original Townsite of Anchorage.

4. GAAB Ord. 1–69, Sec. 21–6(M) Standards for Special Exceptions states in part:
   (9) Planned Unit Development:
   a. It is the intent of the Special Exception provision for a planned unit development to allow certain specified residential, commercial or industrial uses, or combinations thereof, to be developed as a functional and integral unit in a district or districts where some or all of the uses might not otherwise be permitted. The planned unit development concept provides a flexibility in the zoning ordinance which attempts to meet the needs of a growing urban area by encouraging a more creative approach in the development of land while at the same time enhancing and preserving the value, spirit, character and integrity of surrounding areas which have or are developing [sic] under conventional district regulations.

roe and Thompson applied to the Greater Anchorage Area Borough Planning and Zoning Commission for final approval of a special exception to the applicable zoning ordinance for the construction of a planned unit development (PUD) on their combined properties.

The developers proposed to construct 50, two-story, one-, two-, and three-bedroom, luxury townhouse units to be sold as condominiums at prices between $80,000 and $100,000 each. The townhouses were to be of a "common-wall" design and clustered in groups of two to five units. At the Planning and Zoning Commission hearing held on May 29, 1974, 11 residents of the neighborhood known as the Inlet-View South Addition area, which includes the area surrounding Westchester Lagoon, spoke in opposition to the proposed development; a hand count indicated that 50 residents had come to the hearing to oppose the Munroe and Thompson development. After discussion and comment, the Planning and Zoning Commission granted final approval for a special exception for the construction of a PUD subject to 12 conditions, restrictions, and limitations.

On June 5, 1974, approximately 183 residents of the Inlet-View South Addition area filed a notice of appeal from the decision of the Planning and oning Commission to the Board of Adjustment of the City of Anchorage.[5] A hearing on the residents' appeal, before the Board of Adjustment, was set for the evening of July 2, 1974. Although the meeting was originally scheduled for the City Council chambers, an overflow crowd of some 300 people necessitated its removal to the Inlet-View School. At the public hearing, numerous residents spoke in opposition to the Munroe and Thompson development. At the conclusion of the hearing, the Board of Adjustment voted to grant the residents' appeal and deny the application for the special exception previously granted Munroe

and Thompson by the Planning and Zoning Commission. The Board of Adjustment stated, as the basis for its granting of the appeal, the following:

. . . [T]he common-wall design of the townhouses is out of character with surrounding free-standing single-family dwellings within the immediate community and that buildings within the PUD as proposed are substantially out of character with dwellings in the immediate area [and that] the uses . . . would be harmful to public health, safety, convenience, and welfare.

On July 18, 1975, Munroe and Thompson filed notices of appeal from the decision of the Board of Adjustment in superior court. The developers' appeal rested on their contention that the Board of Adjustment had improperly applied the zoning ordinance standards concerning the review of applications for special exceptions and their contention that the decision by the Board of Adjustment was improperly based on the vocal community disapproval of the development expressed prior to and at the July 2 public hearing of the Board. Following oral arguments by Munroe and Thompson, by the City of Anchorage, and by amicus curiae, Westchester Community, Inc., a community group, the superior court issued a written memorandum of its decision on October 8, 1974, denying the appeal. The superior court found that the Board of Adjustment had correctly applied the criteria for review of special exception applications and that the Board's decision was supported by substantial evidence. Additionally, the court found that Munroe and Thompson had not been denied due process of law or equal protection of the laws during the course of the hearing conducted by the Board; in so finding, the superior court rejected appellants' claim that the Board had been improperly biased or prejudiced by the community opposition.

5. In Anchorage, the City Council serves a dual function sitting as the Board of Adjustment hearing appeals from the Planning and Zoning Commission. Under the GAAB Zoning Ordinance, any "interested party" is permitted to appeal decisions of the Planning and Zoning Commission to the Board of Adjustment.

From the decision of the superior court on October 8, 1974, Munroe and Thompson have appealed to this court seeking reversal of the judgment below, reversal of the superior court's awarding of attorney's fees of $1,500 to the City, compensation for damages incurred as a result of the arbitrary and capricious action of the Board of Adjustment, and their own costs and attorney's fees.

Subsequent to the decision of the superior court and the notice of appeal to this court, both parcels of land owned by Munroe and Thompson underwent substantial alteration. In November, 1974, the developers applied to the Greater Anchorage Area Borough Platting Authority for approval of a re-plat[6] of the same parcels for which they had requested a special exception for the construction of a PUD. In their application, Munroe and Thompson requested that the two parcels be re-platted in order:

> to re-subdivide 2 blocks (1 lot, 1 tract) into 2 blocks, 22 lots containing approximately 4.61 acres.

The re-plat was the first step in a plan by the developers to construct duplex housing units on the property which would comply with the R–2D zoning ordinance provisions. At the December 9, 1974, hearing of the Platting Authority, the developers' application for re-platting was granted.

On January 10, 1975, the City of Anchorage filed a complaint against Tract A, Block 47 of the South Addition to the Original Townsite of Anchorage (the parcel owned by Thompson) to take such property by eminent domain for park purposes.[7] Munroe and Thompson challenged the city's authority and necessity for the taking of the property; after a hearing before Judge Victor Carlson, the superior court ruled that the city had both the authority and the necessity to take the property for park purposes. That parcel of land has been added to the Westchester Lagoon greenbelt.[8] During the early summer of 1975 Munroe and Thompson commenced construction of duplex condominiums on the remaining parcel of land. Construction is nearing completion at this time.

Munroe and Thompson have pursued an appeal to this court alleging that the superior court erred in its application of the GAAB ordinances governing the review of an application for a special exception, that the Board of Adjustment abused its powers by denying their application for a special exception in an attempt to "freeze" the value of their land in the subsequent eminent domain proceeding, that the findings of the Board of Adjustment that the proposed PUD was "out of character" with the surrounding neighborhood were not supported by substantial evidence, and that the superior court erred in awarding attorney's fees to the city. Because of the events and alterations to the property which have occurred subsequent to the judgment of the superior court, the central issues in this appeal have been rendered moot.

Both parcels of land for which Munroe and Thompson originally sought a special exception for the construction of a PUD have been so substantially altered and changed that there is now no possibility of constructing the proposed planned unit development. Of the two parcels involved, both have been re-platted; one has been taken by eminent domain for park purposes, the other has been subdivided and developed with duplex condominiums. Thus, even if this court were to reverse the judgment of the superior court, the proposed planned unit development could not be constructed. The granting of the special exception, at this time, would be of

---

6. A re-plat is the process by which a parcel of land is divided into a number of separate lots. In this instance, the developers sought to have their two parcels cut up into 22 lots.

7. *City of Anchorage v. John Munroe, et al.,* Superior Court No. 75–179F.

8. While the taking of the property has been completed by the city, valuation, for compensation purposes, is still in dispute.

no value. This court has held that advisory opinions are to be avoided and that cases which do not constitute actual cases or controversies are not properly considered. *In re GMB*, 483 P.2d 1006, 1008 (Alaska 1971).[9]

Munroe and Thompson have presented two arguments in support of their contention that this appeal is not moot. First, they suggest that the propriety of the denial of the application for a special exception is not moot because a determination on the merits, by this court, may be dispositive of the superior court's award of attorney's fees to the city.[10] Under Rule 82, Alaska R.Civ.P., Alaska provides a mechanism for awarding attorney's fees to the prevailing party in every case. For a variety of reasons, lawsuits often become moot between trial and appeal. We reject the contention that this court should review mooted issues of law solely to provide a means by which the trial court's award of attorney's fees can be contested.[11] To do so would vitiate the mootness doctrine as to all such cases mooted between trial and appeal.[12]

Second, the appellants argue that the denial of their application for a special exception is not moot because it may affect the appraiser's valuation of the smaller parcel of land which was taken by the city for park purposes. Munroe and Thompson contend that since the parcel would be of greater value if amenable to the original PUD development, the denial of their application for a special exception merits review here since the decision of the superior court may be considered res judicata on the issue of valuation of the smaller parcel unless overruled by this court. We disagree. The appraisal of the property taken by the city must, in any event, reflect the fair market value of the land;[13] and the fair market value is, in part, based on the uses to which the property may be put. Among the permissible uses in areas zoned R–2D under the GAAB Zoning Ordinance are planned unit developments, to the extent that a particular PUD complies with the requirements of the ordinance.[14] In appraising the parcel of land which was taken by the city, it will be necessary to consider a variety of factors including the best possible use to which the land might have been put. By the provisions of the ordinance, this includes PUD's of a type suitable to the small parcel of land taken by the city. Our refusal to review the denial of the application for a special exception for the construction of the proposed PUD on both parcels should, in no way, influence the subsequent valuation of the smaller parcel.

We find that appellants' argument concerning the potential res judicata effect of this court's refusal to review the denial of their application for a special exception is not factually well based. Counsel for City of Anchorage represented to this court, at

9. *See also North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413, 416 (1971) ; *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 23 L.Ed.2d 491, 502 (1969) ; *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347, 351 (1964) ; *RLR v. State*, 487 P.2d 27 (Alaska 1971), and *Doe v. State*, 487 P.2d 47 (Alaska 1971).

10. The superior court awarded attorney's fees in the amount of $1,500 to the city pursuant to Rule 82, Alaska R.Civ.P.

11. We are not here referring to a genuine appealable issue regarding the propriety of an award of attorney's fees. We disagree with appellants' contention that we should review a lower court's decision on the merits solely to change the prevailing party. To the extent that *Lee v. State*, 490 P.2d 1206, 1210 (Alaska 1971), holds otherwise, we hereby overrule that case. Appellants have also challenged the trial court's award of attorney's fees to the city and we have addressed that issue *infra*.

12. *Cf. Hernandez v. European Auto Collision, Inc.*, 487 F.2d 378, 387 (2nd Cir. 1973) (concurring opinion) and *Kenigan v. Boucher*, 450 F.2d 487 (2nd Cir. 1971). *See also* 9 A.L.R.3rd 462, 473 which treats moot cases in criminal law.

13. *Dash v. State*, 491 P.2d 1069, 1077 (Alaska 1971), *Ketchikan Cold Storage Company v. State*, 491 P.2d 143, 151 (Alaska 1971).

14. GAAB Ord. 1–69, Sec. 21–5(C), GAAB Ord. 1–69, Sec. 21–6(M)(9).

oral argument, that the appellants' request for a re-plat, which was filed a month prior to the initiation of the eminent domain proceeding by the city, was limited to only one of the two parcels of land for which they had sought a special exception. Our review of the record below, however, indicates that Munroe and Thompson sought a re-plat of both parcels of land.[15] Their application for a re-plat requested the subdivision of Block 32, Lot 33, and Block 47, Tract A into 16 and 6 lots respectively: The application requested permission

> . . . to resubdivide 2 blocks (1 lot, 1 tract) into 2 blocks, 22 lots containing approximately 4.61 acres.

■ Thus, Munroe and Thompson had, apparently, abandoned the original PUD concept a month before the city filed eminent domain proceedings.[16] Having mooted the denial of their application for a special exception themselves, the city's subsequent taking of part of the combined properties for park purposes will not resurrect appellants' right to review of the denial of their application for a special exception for the original combined parcels.

Finally, Munroe and Thompson have urged us to apply the public interest exception to the mootness doctrine articulated in *Doe v. State,* 487 P.2d 47 (Alaska 1971).[17] There we stated that this court will refrain from deciding mooted questions except where the matter is of grave public concern and is recurring yet capable of escaping review.[18] The appellants contend that the mooted issue of the denial of their application for a special exception meets the three pronged test stated therein.

Specifically, Munroe and Thompson allege that their application for a special exception was denied by the Board of Adjustment in an attempt to "freeze" the value of the property, thus limiting the amount which the city would be required to pay for the land in the subsequent eminent domain proceeding. They contend that the denial of an application based on such ulterior motives is a matter of grave public concern, recurring, yet capable of escaping review. Similarly, they argue that the exigencies of seasonal construction in Alaska demand that the mooted issue be reviewed here notwithstanding their subsequent abandonment of the PUD plan and alternative development of the property.

■ We have carefully examined the record and the arguments of counsel and we are not persuaded that this case presents a proper opportunity to apply the public interest exception to the mootness doctrine. We are not convinced that the issue is a recurring one or is of such compelling public interest as to require this court to abrogate its policy of reviewing only matters which constitute actual disputes between the parties. The issues presented are declared moot and this portion of the appeal is dismissed.

■ Finally, Munroe and Thompson contest the superior court's awarding of attorney's fees in the amount of $1,500 to the City of Anchorage. They base their argument on *Gilbert v. State,* 526 P.2d 1131 (Alaska 1974), where we held that it is an abuse of discretion to award attorney's fees against a losing party who has in good faith raised a question of genuine public interest before the courts.[19] We do

---

15. *See* Exhibits 1, 2, and 3, Appellee's Motion to Supplement Record on Appeal, R. 441–450.

16. A.S. 09.55.330 fixes the date of the issuance of the summons initiating the eminent domain proceeding as the date on which valuation of the property is to be made.

17. *See also Etheredge v. Bradley,* 502 P.2d 146 (Alaska 1972); *RLR v. State,* 487 P.2d 27 (Alaska 1971), and *In re* GMB, 483 P.2d 1006 (Alaska 1971).

18. This exception was carved out of the mootness doctrine by the *United States Supreme Court in Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). *See also Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) and *Hall v. Beals* (dissenting opinions by Justices Brennan and Marshall), 396 U.S. 45, 50–51, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

19. In *Kelley Supply Co. v. City of Anchorage,* 516 P.2d 1206, 1211 (Alaska 1973) we de-

not find, however, that the issues raised by Munroe and Thompson were of such genuine public interest as to render the superior court's awarding of attorney's fees improper. In *Gilbert* the plaintiff sought a determination that a three-year residency requirement for candidacy for state office was unconstitutional. Here, Munroe and Thompson have raised questions which are, for the most part, limited to the adjudication of a private interest, i. e., whether they were entitled to a special exception for the construction of a PUD on their combined properties. We find that this lacks the requisite "public character" necessary to prohibit the awarding of attorney's fees under *Gilbert*. Accordingly, we find that the awarding of attorney's fees to the city was proper and reasonable.[20]

The issues raised in the appeal having been rendered moot, and attorney's fees having been properly awarded to the City of Anchorage, the judgment of the superior court is

Affirmed.

BURKE, J., not participating.

clined to adopt a rule which would prohibit the awarding of attorney's fees to a governmental body from a losing party absent a finding of bad faith.

**20.** *See Mobil Oil Corp. v. Local Boundary Commission*, 518 P.2d 92, 104 (Alaska 1974).