Timothy Leroy GIEFFELS, Petitioner,

v.

STATE of Alaska, Respondent.

No. 2787.

Supreme Court of Alaska.

July 23, 1976.

Phillip P. Weidner, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for petitioner.

Ivan Lawner, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for respondent.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BOOCHEVER, Chief Justice.

Issues pertaining to the pre-emption of a judge challenged under the provisions of AS 22.20.022 and Criminal Rule 25(d) are resolved by this petition. On February 11, 1976, petitioner Gieffels was brought before Presiding Judge Ralph E. Moody for an arraignment. Judge Moody had been successfully pre-empted in a previous case involving Gieffels. The indictments in that case were dismissed by another judge because of insufficient evidence and prosecutorial error before the grand jury. The instant case arose as a result of proceed-

ings following reindictment on an identical charge. At the start of the arraignment proceedings after reindictment, the following colloquy took place:

> MR. WEIDNER: Your Honor—I think Your Honor has been pre-empted in the instant proceeding. It might be appropriate to . . .
>
> THE COURT: This is a procedural matter and I will not allow a pre-empt. You will proceed with the arraignment.
>
> MR. WEIDNER: I think you've previously been pre-empted and it's been honored in a similar case . . .
>
> THE COURT: It's denied, and we'll proceed with the arraignment.

Subsequently the court asked Gieffels his true name, and counsel for Gieffels, Mr. Weidner, advised Gieffels not to make any comments. Mr. Weidner stated that he thought the court did not have jurisdiction over Gieffels because no summons or warrant had been issued. The court again asked Gieffels his true name, and Mr. Weidner again advised the defendant not to answer. The following comments were then made:

> THE COURT: I'm going to find you in contempt, sir, if you don't. Are you going to answer? All right. I'll revoke any bail until you answer your name, sir. And we've handed a copy of this [the indictment] to your counsel and that's all we need at this time until he . . .
>
> MR. WEIDNER: Your Honor. . . .
>
> THE COURT: . . . answers his name, no bail will be set. Anything else?
>
> MR. WEIDNER: Yes, Your Honor. I wanted to first of all direct the court's attention to the fact that I believe that Mr. Gieffels has been brought before this court illegally. I'm not aware of any summons that has been served on him or any arrest warrant.

After the arraignment, again on February 11, 1976, Judge Moody issued a calendaring order transferring the case to Judge Lewis.

Later the same day, Gieffels filed a petition for review in this court from Judge Moody's orders. His petition consists of objections to Judge Moody's actions: mainly, the refusal to disqualify himself, the revocation of bail, the alleged holding in contempt of Gieffels, the lack of a warrant or summons and the refusal to consider a motion to dismiss the indictment for failure to state an offense.

On February 13, 1976, Judge Lewis held another arraignment of Petitioner Gieffels at which time a warrant and summons were issued, and the motion to dismiss the indictment was heard and denied. Furthermore, the day after the arraignment before Judge Moody, bail was reinstated.[1]

Petitioner Gieffels argues first that Judge Moody's refusal to disqualify himself and his subsequent conducting of the arraignment were in total disregard of *Channel Flying, Inc. v. Bernhardt*, 451 P. 2d 570 (Alaska 1969). Second, Gieffels contends that the superior court disregarded this court's decision in *Gilbert v. State*, 540 P.2d 485 (Alaska 1975), to the effect that bail must be set in a criminal case. Third, Gieffels argues that the judge disregarded Criminal Rule 9(a), which petitioner contends requires that a criminal defendant must be brought before the court by virtue of either a warrant or a summons. Fourth, Gieffels contends that Judge Moody held him in contempt in violation of his fifth amendment privileges, and that, in any case, Criminal Rule 10(b)(2) provides that a defendant shall be "given the opportunity to declare his true name" and not that a defendant shall be forced to state his name.

■ In general, advisory opinions are to be avoided, and cases which do not constitute actual cases or controversies are not

---

1. On February 12, 1976, Justice Erwin issued a stay of all rulings of the superior court entered at the arraignment of Gieffels in order that the case be assigned to another superior court judge. The order also reinstated Gieffels' previous bail of $100,000.00.

properly considered. *Munroe v. City Council for the City of Anchorage,* 545 P. 2d 165, 169–70 (Alaska 1976); *In re G.M. B.,* 483 P.2d 1006, 1008 (Alaska 1971). If we were to reverse Judge Moody's order on all grounds raised by petitioner, the relief would be for further proceedings in accordance with this court's opinion. Further proceedings have already occurred, however, under Judge Lewis' supervision. These subsequent proceedings have completely eliminated all grounds of petitioner's objections,[2] and this raises the question as to whether the petition is moot.

One exception to the mootness doctrine is where a matter is of grave public concern that is recurring and capable of escaping review. *Munroe v. City Council for the City of Anchorage, supra; Doe v. State,* 487 P.2d 47, 53 (Alaska 1971); *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310, 316 (1911). The parameters of the fundamental right to an impartial judge are certainly a matter of grave public concern. Because here safeguards in Alaska's criminal justice system resulted in achieving the relief petitioner earlier sought, we have some indication that the issue is capable of escaping review. Further because of the apparent confusion in this area, the reach of a party's pre-emptive rights is open to debate. For this reason, we grant review solely on the issue of the effect of pre-emption under AS 22.20.022 and Criminal Rule 25(d).

Judge Moody was timely pre-empted in proceedings under a prior, identical indictment. When the second indictment was issued, Judge Moody was assigned the case. Mr. Weidner, counsel for Gieffels, orally pointed out the prior pre-emption to Judge Moody. Judge Moody did not recognize the pre-emption.

In *McKinnon v. State,* 526 P.2d 18, 25 (Alaska 1974), we stated that where two proceedings involve the same defendant and the necessity of proving the same facts and issues, a judge who was pre-empted in the prior proceeding is automatically disqualified from presiding "at any proceeding against the defendant in which those same charges [are] at issue". Therefore, Judge Moody was automatically pre-empted in the second proceeding.

Even though Judge Moody was pre-empted, the question remains as to whether he could still perform some judicial functions concerning the case from which he was pre-empted.

There are two provisions which apply to peremptory challenges.

AS 22.20.022 reads in part:

(a) If a party or his attorney in a district court action or a superior court action, civil or criminal, files an affidavit alleging under oath that he believes that he cannot obtain a fair and impartial trial, the presiding district court or superior court judge, respectively, shall at once, and without requiring proof, assign the action to another judge of the appropriate court in that district, or if there is none, the chief justice of the supreme court shall assign a judge for the hearing or trial of the action. The affidavit shall contain a statement that it is made in good faith and not for the purpose of delay.

Criminal Rule 25(d), promulgated by Supreme Court Order No. 185, effective July 1, 1974, reads in part:

(d) *Change of Judge as a Matter of Right.* In all courts of the state where a master calendar system has been adopt-

---

**2.** Although Judge Moody refused to disqualify himself at the time of the arraignment, he transferred the case to Judge Lewis afterwards, and this court stayed all of the rulings entered at the arraignment. No formal order of contempt was issued by Judge Moody, who ordered that Gieffels be held without bail until

he answered the question as to his name. Bail was reinstated the following day, February 12, 1976, by supreme court order. On February 13, 1976, Judge Lewis issued a warrant and summons and denied Gieffels' motion to dismiss the indictment.

ed, a judge may be peremptorily challenged as follows:

(1) *Entitlement.* In any criminal case in superior or district court, the prosecution and the defense shall each be entitled as a matter of right to one change of judge. When multiple defendants are unable to agree upon the judge to hear the case, the trial judge may, in the interest of justice, give them more than one change as a matter of right; the prosecutor shall be entitled to the same number of changes as all the defendants combined.

(2) *Procedure.* At the time required for filing the omnibus hearing form, or within 5 days after a judge is assigned the case for the first time, a party may exercise his right to change of judge by noting the request on the omnibus hearing form or by filing a "Notice of Change of Judge" signed by counsel, if any, stating the name of the judge to be changed. A judge may honor a timely informal request for change of judge, entering upon the record the date of the request and the name of the party requesting it.

(3) *Re-Assignment.* When a request for change of judge is timely filed under this rule, the judge shall proceed no further in the action, except to make such temporary orders as may be absolutely necessary to prevent immediate and irreparable injury before the action can be transferred to another judge. *However, if the named judge is the presiding judge, he shall continue to perform the functions of the presiding judge.* (emphasis added)

In *Channel Flying, Inc. v. Bernhardt, supra,* decided before the promulgation of Criminal Rule 25(d), we stated that the following effect resulted from a successful pre-emption of a judge under the procedures set forth in AS 22.20.022:

> The only meaning that can be given to the requirement that the matter be assigned "at once and without requiring proof" to another judge, is that when a timely and proper affidavit is filed the judge concerned is at once disqualified from acting as a judge in the particular action or proceeding. When he is disqualified he no longer possesses the qualities necessary to act as a judge, i. e., the qualities of power, capacity, fitness or competency to proceed further. In short, when a proper affidavit has been timely filed, the judge involved is without power or jurisdiction to take any further action in the proceeding. If this were not the intent and effect of the statute, then it would be meaningless and ineffective. 451 P.2d at 574 (footnote omitted).

The common-law rule is that pre-empted judges can perform formal, non-discretionary (or "ministerial") acts.[3] Gieffels argues, however, that since the functions

---

3. Generally, courts have held that a disqualified judge may still perform a purely ministerial or non-discretionary action. *See, e. g., Driver v. State,* 46 So.2d 718, 721–22 (Fla.1950); *People v. Pate,* 53 Ill.2d 485, 292 N.E.2d 387, 398 (1973); *Hass v. Leverton,* 128 Iowa 79, 102 N.W. 811, 812 (1905); *Menifee County Board of Education v. Fiscal Court,* 329 S.W.2d 46, 48 (Ky.1959). Courts have variously defined the allowable actions of a pre-empted judge as follows: as allowing purely ministerial acts in no way connected with the trial [*Hass v. Leverton, supra*]; acts which are purely formal in character and where the judge is only discharging his ministerial duties [*Menifee County Board of Education v. Fiscal Court, supra*]; mere formal acts [*State v. Compton,* 57 N.M. 227, 257 P.2d 915, 923 (1953)]; formal orders of a routine nature not affecting merits of the cause [*Prather v. Prather,* 263 S.W.2d 57, 59 (Mo.App.1954)]; and that powers are suspended only so far as discretionary action in the case is concerned [46 Am.Jur. 2d "Judges" § 230 at 252].

Examples of actions that have been stated to be permissible when performed by a disqualified judge are: signing certificates seeking testimony and attendance of non-resident witnesses [*State v. James,* 76 N.M. 376, 415 P.2d 350, 355 (1966)]; drawing jurors' names from a box, issuing venire, returning venire, discharging from jury duty a man above age for duty [*Driver v. State, supra*]; certification of a transcript to another court [*Hass v. Leverton, supra*]; and

allowable at common law must still be performed by a judge, and since *Channel Flying, Inc.* states that a statutory pre-emption immediately destroys all judicial attributes, the common-law rule cannot be applied in Alaska.

Even if Gieffels is correct in his reading of *Channel Flying, Inc.*, its authority on that point has been substantially weakened by the subsequent promulgation of Criminal Rule 25(d).

■ Art. IV, sec. 15 of the Alaska Constitution provides that the legislature may only amend or change rules regulating judicial procedure in the courts of the state; the supreme court is given sole authority to promulgate those rules. We have consistently affirmed our power to regulate procedural and administrative matters in Alaska courts. For example, in *Silverton v. Marler,* 389 P.2d 3, 5–6 (Alaska 1964), we struck down a statute which prescribed how a civil action was to be commenced because it "attempt[ed] to regulate a matter of procedure which is within the province of this court . . . ." Similarly, a statute which provided for automatic continuance of all court proceedings when a party, attorney of record or a principal witness was a member of the legislature was struck down in *City of Valdez v. Valdez Development Co.,* 506 P.2d 1279 (Alaska 1973), because it conflicted with Civil Rule 40(f) which allowed continuance only "for cause shown".[4]

■ AS 22.20.022 encompasses both procedural and substantive matters. In *Chan-*

nel *Flying, Inc. v. Bernhardt, supra,* 451 P.2d at 576, we held that:

> AS 22.20.022 is not invalid as an attempt to usurp the rule-making powers of this court *insofar as it provides for a peremptory disqualification of a judge.* (emphasis added)

The procedure to be followed in implementing the substantive right created by AS 22.20.022, however, is subject to the rule-making powers of the court.

■ In *Roberts v. State,* 458 P.2d 340, 346 n. 17 (Alaska 1969), we implied that perhaps not all of AS 22.20.022 was a valid exercise of legislative power:

> *In certain respects* AS 22.20.022 was sustained as a valid exercise of legislative power in *Channel Flying, Inc. v. Bernhardt . . . .* (emphasis added)

Although the legislature has the power to create the right to a fair trial before an unbiased judge, and the right to pre-empt a judge without requiring actual proof of bias or interest, it has very limited power to provide for the means by which that pre-emption right may be exercised. Until the legislature validly changes Criminal Rule 25(d),[5] that rule is the sole provision which may be consulted in determining whether the pre-emptive right was properly exercised and the effect of the pre-emption on the procedural and administrative functions of the court system. Therefore, insofar as Rule 25(d) regulates only the procedural aspects of the peremptory right created by AS 22.20.022, and to the extent

carrying out an order of remand from a higher court [*Stahl v. Board of Sup'rs of Ringgold County,* 187 Iowa 1342, 175 N.W. 772, 776 (1920)]. Examples of impermissible acts are fixing of bail [*State v. Nagel,* 185 Or. 486, 202 P.2d 640, 646 (1949), *cert. denied,* 338 U.S. 818, 70 S.Ct. 60, 94 L.Ed. 495, 496 (1949)] and revoking probation [*Vaughn v. State,* 226 So.2d 443 (Fla.App.1969)].

4. *See also Liberty Nat. Ins. Co. v. Eberhart,* 398 P.2d 997, 999 (Alaska 1965); *Leege v. Martin,* 379 P.2d 447, 448–51 (Alaska 1963); *cf. Winegardner v. Greater Anchorage Area Borough Bd. of Equalization,* 534 P.2d 541, 545–47 (Alaska 1975).

5. Under Alaska's tripartite form of government, the legislature may not impose a rule which would interfere with the proper functioning of the judicial system. Under the inherent power of the judicial branch of government, a presiding judge must be given minimal authority to accomplish the work of the court by conducting the preliminary steps for arraignment; calendaring, including assigning of cases to particular judges; and other acts necessary to the proper functioning of the courts. *See Continental Ins. Cos. v. Bayless & Roberts, Inc.,* 548 P.2d 398, 408–11 (Alaska 1976).

that the rule does not infringe upon the substantive right created by statute, the provisions of Rule 25(d) supersede the legislative enactment.

Criminal Rule 25(d) regulates the means or method by which a party's peremptory challenge takes effect. The major changes found in Rule 25(d) provide for different time limitations,[6] do away with the need for the filing of an affidavit alleging the inability to obtain a fair and impartial trial and specify the procedure to be followed when a presiding judge is challenged. These changes, for the most part, in no way impair the substantive right to a fair trial before an unbiased judge created by AS 22.20.022; in fact, Rule 25(d) generally liberalizes the method by which a party may exercise a peremptory challenge.[7]

At the time of the February 11, 1976 appearance of Gieffels, Judge Moody was the Presiding Judge of the Anchorage superior court and conducted all arraignments as part of his special duties. Criminal Rule 25(d)(3) provides:

> *Re-Assignment.* When a request for change of judge is timely filed under this rule, the judge shall proceed no further in the action, except to make such temporary orders as may be absolutely necessary to prevent immediate and irreparable injury before the action can be transferred to another judge. *However, if the named judge is the presiding judge, he shall continue to perform the functions of the presiding judge.* (emphasis added)

Although the means or method by which a peremptory challenge is to be raised and

recognized in the course of judicial proceedings is usually a procedural matter solely within the rule-making powers of this court, such procedural regulations cannot be the basis of any action which would interfere with the substantive right created by legislative enactment. Therefore, it is necessary to analyze the duties of a presiding judge in light of the substantive right created by AS 22.20.022.[8]

In *Channel Flying, Inc. v. Bernhardt, supra,* 451 P.2d at 575, 576, we stated that the right created and defined by AS 22.20.022 is that:

> [a] litigant is entitled to a fair hearing before a tribunal which is disinterested, impartial and unbiased . . . . The statute does nothing more than provide a reasonable method for assuring a fair trial for all litigants.

> · · · · · ·

> The statute rather creates and defines a right—the right to have a fair trial before an unbiased and impartial judge. (footnotes omitted) [9]

Furthermore, the statute regulates that right by allowing a challenge to be effective without requiring actual proof of bias or interest.

If a procedural or administrative action taken by a disqualified judge under the provisions of Criminal Rule 25(d)(3) could not possibly interfere with a defendant's right to a fair disposition of his case because of bias or interest on the part of the disqualified judge, then the substantive right created by AS 22.20.022 would not be affected. Only if the administrative or procedural action interferes with the sub-

**6.** In *Kvasnikoff v. State,* 535 P.2d 464, 466 n. 5 (Alaska 1975), we noted the apparent conflict between the rule and the statute: Facially, AS 22.20.022 and Crim.R. 25(d)(2) appear to set forth different time requirements. However, since petitioner's peremptory challenge is untimely under both provisions, we need not resolve the apparent conflict at this time.

**7.** For example, a notice of change of judge can be filed at the omnibus hearing under Criminal Rule 25(d), which in many cases may be beyond the time limitations imposed by AS 22.20.022(c). Furthermore, not only

is an affidavit not required (simple notation on the omnibus hearing form signed by the attorney being sufficient under the rule), but also informal requests are allowed under the rule.

**8.** The functions of a presiding judge which are particularly relevant to a peremptory challenge include making calendaring orders, arraigning defendants, taking pleas, setting bail and ruling on pre-trial motions.

**9.** *See also In re G. K.,* 497 P.2d 914, 915 (Alaska 1972); *Roberts v. State, supra,* 458 P.2d at 345–46.

stantive part of AS 22.20.022 would an action by a disqualified judge be impermissible. With this in mind, we turn to the functions of a judge at an arraignment to see if there are any actions which could interfere with the right of a defendant to a fair disposition of his case.

■ Normally, calendaring orders and other procedural matters regarding the master calendar do not directly affect the ultimate disposition of the case. On the other hand, rulings on points of law regarding such matters as search and seizure, sufficiency of the indictment and other pre-trial legal decisions could be affected by bias or interest and would have a direct effect on the ultimate disposition of a defendant's case.

■ A more difficult problem concerns the taking of a plea. Until the defendant pleads guilty or nolo contendere, Criminal Rule 10 and 11, governing the arraignment, do not permit a judge any discretion. There is thus no possibility of bias that would interfere with the subsequent ability of a defendant to receive a fair disposition of his case. The judge must read the indictment or state the substance of the charge. He must hand a copy of the indictment or information to the defendant before the plea. He must inform the defendant of the name on the indictment and give the defendant the opportunity to declare his true name.[10] Finally, if a defendant has waived counsel, the judge must inform him of his right to a peremptory challenge.

■ If the defendant pleads "not guilty", then the case is set for trial and subsequent pre-trial hearings. Even if the judge were actually biased, these calendaring actions normally would not have an effect on the ultimate fair disposition of a defendant's case, and thus in the absence of a specific objection, they may be performed by a pre-empted presiding judge. Calendaring, however, under some circumstances may affect substantial rights such as where a defendant or counsel contends he will not be ready for trial on a specified date. Therefore, if calendaring becomes a disputed issue, it should be immediately referred to another judicial officer.

■ If the defendant pleads "guilty" or "nolo contendere", however, then under Criminal Rule 11, the judge must determine if the plea is voluntary and has a reasonable basis; in addition, he must make inquiries not only of the defendant, but also of counsel for the defendant and the prosecuting attorney. This is an action that may be affected by bias which would interfere with the fair disposition of the defendant's case. At that point, the judge should proceed no further and immediately assign the case to another judge for determination of the voluntariness of the guilty plea.

■ Another difficult problem, similar to calendaring, arises with the procedural means of setting bail. AS 22.20.022 creates and enforces the right to receive a fair disposition of a case and regulates that right by providing a means of assuring that it is not impinged upon by a biased or partial judge. Bail matters, however, do not affect the final disposition of a case; the resolution of bail questions generally have no bearing on the process that determines the guilt or innocence of a defendant. Therefore, in many cases, the right regulated and enforced by AS 22.20.022 is not impinged upon by allowing a pre-empted judge to hear matters pertaining to bail.

---

10. Below, Gieffels stood mute when asked his true name. Upon Gieffels' refusal to answer, Judge Moody revoked bail until Gieffels would answer his true name.
Criminal Rule 10(b)(2)(ii) provides:
 If the defendant declares no other name to be his true name, the case against the defendant shall proceed under the name which appears in the indictment or information.

If the defendant stands mute, then the case automatically proceeds under the name in the indictment. A positive declaration by the defendant that no other name is his true name is not required. Thus the judge had no discretion to punish Gieffels for standing mute since the rules do not require the defendant to respond.

On the other hand, we have consistently recognized the importance of matters concerning both bail [11] and any situation which could lead to the imprisonment, however temporary, of an individual.[12] Inability to meet bail requirements could cause incarceration interfering with a defendant's preparation of his defense. We also recognize that allowing a challenged judge to resolve disputed questions surrounding bail can possibly lead to an unjust temporary imprisonment of an individual. Therefore, if the amount of bail or the conditions thereunder are disputed issues, the setting of bail should be immediately referred to another judicial officer.[13] Furthermore, the defendant should be advised of his right to have bail heard by another judge.

Insofar as Judge Moody as presiding judge refused to disqualify himself prior to the arraignment of the defendant, his action is affirmed. The petition for review as to other issues is denied for mootness.

AFFIRMED IN PART AND DISMISSED IN PART FOR MOOTNESS.

11. See, e. g., Martin v. State, 517 P.2d 1389 (Alaska 1974); Gilbert v. State, 540 P.2d 485 (Alaska 1975).

12. See, e. g., State v. Browder, 486 P.2d 925, 933–40 (Alaska 1971); Baker v. City of Fairbanks, 471 P.2d 386, 401–02 (Alaska 1970).

13. State v. Nagel, 202 P.2d 640, 646 (Or. 1949), cert. denied, 338 U.S. 818, 70 S.Ct. 60, 94 L.Ed. 495, 496 (1949).