Carolyn CAMP, Maureen Camp, Janene Camp, Greg Camp, Douglass Camp, Charmaine Stevens, by Paul Stevens, her Guardian Ad Litem; and Paul Stevens, individually, Plaintiffs,

v.

FORWARDERS TRANSPORT, INC., a corporation, Defendant.

FORWARDERS TRANSPORT, INC., Third-Party Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware corporation; and Reese Products, Inc., an Indiana corporation, Third-Party Defendants.

No. CV 80–4068–RJK (Rx).

United States District Court, C. D. California.

April 8, 1982.

Allen I. Neiman, Jerome S. Billet, Neiman & Billet, Beverly Hills, Cal., for plaintiffs.

John Sappington, James Hoffmann, Bodkin, McCarthy, Sargent & Smith, Los Angeles, Cal., for cross-claimant and cross-defendant Maureen Camp.

Robert G. Clinnin, William Paul Kannow, Clinnin, Siracuse & Belcher, Los Angeles, Cal., for defendant and cross-claimant Freight Forwarders Transport, Inc.

## MEMORANDUM OF DECISION

KELLEHER, District Judge.

This is an action for wrongful death and personal injuries arising out of an accident on August 22, 1980 in Oklahoma. Plaintiffs are citizens of California. Defendant Forwarders Transport is a New Jersey corporation with its principal place of business in New Jersey. Defendant Forwarders has asserted a Cross-claim for equitable indem-

nity against plaintiff Maureen Camp (who was driving plaintiffs' car at the time of the accident). Plaintiff Maureen Camp has asserted a Counter-claim against defendant Forwarders for property damage occasioned to the Camp vehicle. The Court has signed the pre-trial conference order, and the trial of this action has been set for August 10, 1982. The issue presented is whether the law of California, New Jersey, or Oklahoma should apply to the present case.

### 1. Choice of Law Rules

There is no doubt that when subject matter jurisdiction is based upon diversity of citizenship, this Court must apply the choice of law rules of the State of California. *Strassberg v. New England Mutual Life Insurance Co.*, 575 F.2d 1262 (9th Cir. 1978); *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

California choice of law rules rest upon a governmental interest analysis approach. Under the governmental interest analysis approach, the choice of law is determined by an examination of the governmental interests of each of the candidate jurisdictions. *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). California courts are obliged to consider the actual stake, as opposed to the hypothetical interest, that the potentially concerned states have in the litigation. *Strassberg v. New England Mutual Life Insurance Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978). When only one of the states related to a case has a legitimate interest in the application of its law and policy to the issue in question, and the other states have no such interest, there is no real problem and the law of the interested state is applied. *Hurtado v. Superior Court*, 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 110, 552 P.2d 666, 670 (1974).

When two or more states have a legitimate interest in the application of their laws and policies to the issue in question, California applies the comparative impairment test. Again, it is important to identify the real, as opposed to a hypothetical, interest such state has in having its law

applied to the issue in question. *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320, 128 Cal.Rptr. 215, 219, 546 P.2d 719, 723 (1976). The comparative impairment test seeks to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. Such conflicts are resolved by applying the law of the state whose interests and policy would be the more impaired if its law is not applied. *Bernhard*, 16 Cal.3d at 320, 128 Cal.Rptr. at 219, 546 P.2d 723. The Court *does not* "weigh" the conflicting governmental interests in the sense of determining which conflicting law manifested the "better" or "worthier" social policy of the specific issue. This is because such a balancing of conflicting state policies is difficult to justify in the context of a federal system in which states are empowered to mold their policies as they wish. *Id.*

It is appropriate to analyze each separate issue under the governmental interest analysis approach used in California. Although the California Supreme Court has not explicitly adopted this method, it is implicit in that Court's analysis of cases. *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 167 (3rd Cir. 1980). Furthermore, it is consistent with modern interest analysis to examine comparative governmental interests as to each issue, to the extent issues are separable and the balance of comparative interests may vary. *Id.*

Plaintiffs contend that under California choice of law rules there is a preference for applying California law. However, such a preference would be inconsistent with California's governmental interest analysis approach and the California courts' insistence that they will not "weigh" competing state policies (see analysis of *Bernhard*, second paragraph above). The language of the cases in this area is rather confusing.

There is language in some of the earlier cases to the effect that the law of the forum will be displaced only if there is a compelling reason to do so. *See Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711, 731, 101 Cal.Rptr. 314, 327 (1972); *Dixon*

*Mobile Homes Inc. v. Walters,* 48 Cal. App.3d 964, 972–973, 122 Cal.Rptr. 202, 208 (1975). However, this language has been explicitly overruled in *Cable v. Sahara Tahoe Corp.,* 93 Cal.App.3d 384, 393, 155 Cal. Rptr. 770, 776 (1979), and it has been implicitly overruled by the adoption of the comparative impairment approach in *Bernhard, supra* (upon which the *Cable* court relied).

■ Plaintiffs also contend that *Travelers Ins. Co. v. Workmen's Comp. App. Bd.,* 68 Cal.2d 7, 64 Cal.Rptr. 440, 434 P.2d 992 (1967), *Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 552 P.2d 666 (1974), and *Beech Aircraft Corp. v. Superior Court,* 61 Cal.App.3d 501, 132 Cal.Rptr. 541 (1976), stand for the proposition that the law of the forum state (i.e. California) will generally be applied. That statement is a gross oversimplification. In *Beech* the court merely quoted verbatim the test set forth in *Hurtado. See Beech,* 132 Cal.Rptr. at 552. In *Hurtado* the court said,

"... generally speaking the forum will apply its own rule of decision *unless a party litigant timely invokes the law of a foreign state.* In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it. (Citations omitted)." 11 Cal.3d at 581, 114 Cal.Rptr. at 110, 552 P.2d at 670.

Therefore, it is clear that there is no presumption against the application of the law of a foreign state to an issue once a party timely invokes that law (as defendant has done in the present case), and shows that the application of that law will further an interest of the foreign state. Furthermore, it is obvious that *Travelers Ins. Co.* (Cal. 1968) is no longer authoritative to the extent that it is inconsistent with the test set forth in *Hurtado* (Cal.1974) and the policy set forth in *Bernhard* (Cal.1976) that California courts would not "weigh" the value of competing state policies.

In summary, once a party has invoked the law of a foreign state and demonstrates that the application of that law would fur-

ther the interest of the foreign state, California analyzes the problem using the governmental interest approach. If neither California nor any other state has an interest in applying its law to the issue involved, then the law of the foreign state will be applied. If California (or some other state) has a real interest in having its law applied to the issue in question, California analyzes the problem using the comparative impairment test, without any bias, preference or presumption against the law of the foreign state.

### 2. Application of Choice of Law Rules

#### A. Traffic Laws

■ In the leading case in California on choice of law, *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), the court recognized that, as to conduct within its borders, a state has the predominant interest. 63 Cal.Rptr. at 34, 432 P.2d at 730.

Therefore, the Court holds that the traffic laws of Oklahoma shall apply to the present case for the purpose of determining whether a party was negligent *per se.*

#### B. Joint and Several Liability

Plaintiffs contend that California law should apply to the cross-claim against plaintiff Maureen Camp. Defendant contends that Oklahoma law should apply.

■ California law recognizes the doctrine of joint and several liability whereby any one of joint tortfeasors may be held liable for the full amount of damages assessed. *Southland Mech. Const. Corp. v. Nixen,* 119 Cal.App.3d 417, 173 Cal.Rptr. 917 (1981); *Farrell v. Placer County,* 23 Cal.2d 624, 145 P.2d 570 (1944). California places the risk that one tortfeasor will be unable or unwilling to bear his share of the responsibility on his fellow tortfeasors in order to maximize recovery to the injured party. *Hemmelgarn v. Boeing,* 106 Cal. App.3d 576, 165 Cal.Rptr. 190 (1980).

■ In contrast, Oklahoma recognizes the doctrine of joint and several liability

*only when* damages cannot be apportioned by the jury. Otherwise, a tortfeasor is *only severally* liable for that percentage of the award attributable to the individual tortfeasor. *Laubach v. Morgan,* 588 P.2d 1071 (1978). In Oklahoma the plaintiff bears the risk that a tortfeasor will be unable or unwilling to bear his share of the responsibility, because Oklahoma feels that holding a tortfeasor who is only 20 percent at fault liable for all of the damage is unfair. *Laubach, supra,* at 1074.

Applying California's governmental interest analysis to this issue, it is clear that the California law of joint and several liability should apply to this case. Oklahoma has no interest in whether a New Jersey defendant is held jointly liable for the entire amount of damage; the Oklahoma law of several liability was adopted for the benefit of Oklahoma defendants. In contrast, California has a very real interest in making sure that resident plaintiffs receive all of the damages to which they are entitled since the economic impact of any shortfall will be felt in California.

Therefore, the Court holds that the California law of joint and several liability shall apply to this case.

### C. *Pure Comparative Negligence v. 50 Percent Rule*

Plaintiffs contend that California law on comparative negligence should apply to this case. Defendant asserts that Oklahoma law regarding comparative negligence should govern.

California has adopted the "pure" form of comparative negligence whereby a negligent plaintiff is never barred from recovery, but the plaintiff's recovery is reduced in proportion to his responsibility for the accident. *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975).

Oklahoma also has a form of comparative negligence in which a plaintiff's recovery is reduced in proportion to his responsibility for the accident, but Oklahoma has adopted the "50 percent" rule. Under the "50 percent" rule, a plaintiff cannot recover if his

negligence is of a *greater* degree than all of the defendants combined. Title 23 Okla. Stat. §§ 13, 14. *Laubach v. Morgan,* 588 P.2d 1071 (1978).

There are three well recognized policy reasons for the imposition of a "50 percent" rule on a "pure" comparative negligence system:

1) the feeling that it would be unfair to allow a party who is more at fault in an accident to recover from one who is less at fault;

2) reduced insurance costs because of fewer recoveries; and

3) lower judicial costs due to fewer cases because potential plaintiffs who know, or believe, they are more than 50 percent responsible for an accident will not bring suit. V. Schwartz, *Comparative Negligence* § 21.3 (1981).

Oklahoma does not have an interest in:

1) the fairness of imposing liability as between California plaintiffs and a New Jersey defendant;

2) the cost of insurance in New Jersey (i.e. defendant's residence and principal place of business); or

3) an adverse effect on judicial economy in the state of California.

Therefore, Oklahoma does not have an interest in the application of the "50 percent" rule to the present case for any of the generally accepted policy reasons for the rule.

Defendant points out that California has recognized that a foreign state has the predominant interest with regard to conduct within its borders. *Reich v. Purcell,* 67 Cal.2d 551, 556, 63 Cal.Rptr. 31, 34, 432 P.2d 727, 730 (1967). Defendant argues that the Oklahoma law of comparative negligence (i.e. "50 percent" rule) should be applied to the liability issue in this case because Oklahoma has the predominant interest in the regulation of vehicular traffic within Oklahoma. Defendant's argument appears to be that Oklahoma adopted the "50 percent" rule to exact a penalty on drivers who are primarily responsible for traffic accidents in order to deter such accidents. Defendant

has cited no authority from Oklahoma or elsewhere in support of such an argument. The Court is similarly unable to find any authority for a "deterrence theory" rationale for the "50 percent" rule that would relate to Oklahoma's interest in regulating its vehicular traffic.

California's interest in applying its law of comparative negligence is obvious. California has a real interest in making sure that plaintiffs, California residents, receive their proportional share of damages since the economic impact of any shortfall will be felt in California. This is especially true in this case, a wrongful death action, in which one wage earner was killed.

Therefore, the Court holds that the California law of comparative negligence shall apply to the liability aspects of this case.

D. *Standing to Sue for Wrongful Death and Nature of Damages Recoverable*

Plaintiffs contend that California law on wrongful death should apply to this case. Defendant contends that New Jersey law on wrongful death should apply.

California and New Jersey law differ regarding the persons who have standing to sue for wrongful death and the nature of damages recoverable. Section 377 of the California Code of Civil Procedure provides that only heirs may bring an action for wrongful death, but the definition of heirs is considerably expanded for the purpose of interpreting that section from the way it is defined in the probate code, to include 1) dependent parents, step children, putative spouse (void or voidable marriage, good faith belief marriage was valid), and children of the putative spouse, and 2) all dependent minors who have resided for the previous 180 days in the decedent's household. Under New Jersey law the persons who have standing to sue for wrongful

death are limited to those entitled to take any intestate personal property of the decedent. Title 2A N.J.S.A. § 31–4. Furthermore, under New Jersey law, dependent heirs recover to the exclusion of non-dependent heirs in the event that both classes are before the court. Title 2A N.J.S.A. § 31–4; *State ex rel. Gosnell v. Gosnell*, 106 N.J.Super. 279, 255 A.2d 769 (1969); *Turon v. J. & L. Construction Co.*, 8 N.J. 543, 86 A.2d 192 (1952). There is no such bias against non-dependent heirs under California law.

Under California law a plaintiff in a wrongful death action can recover for loss of decedent's comfort and society. *Borer v. American Airlines Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977). Under New Jersey law a plaintiff in a wrongful death action cannot recover for the loss of society and companionship of the decedent. *Alfone v. Sarno*, 168 N.J.Super. 315, 403 A.2d 9 (1979); *McStay v. Przychocki Co.*, 9 N.J.Super. 365, 74 A.2d 370, aff'd 10 N.J.Super. 455, 77 A.2d 276 (1950).

It is clear that both California and New Jersey have an interest in having their laws regarding unlawful death applied in this case. California's wrongful death statute manifests a policy that all of the decedent's family members [1] and dependents are to be protected. California's interest in having its wrongful death law applied to the present case is particularly strong because all plaintiffs are California residents, and any of the decedent's family members or dependents who are denied recovery because of the application of New Jersey law might have to seek public assistance in California. In contrast, New Jersey has an interest in protecting its resident corporations from excessive damage awards in wrongful death cases. Since both states have an interest in having their respective

---

1. The Court recognizes that family members (i.e. heirs) may have received substantial benefits from the decedent without being his legal dependents. Under New Jersey law, those family members are not protected by the wrongful death statute because dependent heirs recover to the exclusion of non-dependent heirs. Title 2A New Jersey Statutes, Annotat-

ed 31–4; *State ex rel. Gosnell v. Gosnell*, 106 N.J.Super. 279, 255 A.2d 769 (1969); *Turon v. J. & L. Construction Co.*, 8 N.J., 543, 86 A.2d 192 (1952). California has a real interest in protecting those family members. The benefits they received from the decedent may have made the difference between their seeking public assistance or not.

wrongful death statutes applied to this case, the Court must analyze the conflict using the comparative impairment test.

If the New Jersey wrongful death statute is applied to this case, the California policy of protecting all of decedent's dependent family members (and all dependent children), and making sure they do not need to seek public assistance, would be gravely impaired. This is because what is involved is not merely a reduction in damages, but the total bar of a cause of action whereby dependents otherwise protected under California law would be barred from any remedy. Furthermore, adopting the conclusion that New Jersey law applies to this case necessarily implies that in all cases in which a California resident has an accident with a resident of a second state in a third state, the California resident's decedents are limited to the recovery provided by the law of the defendant's residence (which may mean, as under New Jersey law, that some of the decedent's dependents receive no compensation).

If California's wrongful death statute is applied to this case, New Jersey's policy of protecting its resident corporations from excessive damage awards in wrongful death cases will be impaired, but not to as great an extent as California's policy would be impaired if New Jersey law was applied. Defendant has $1 million worth of liability insurance. If defendant is forced to pass on the costs of insurance or of a damage award to its customers, defendant, and not the taxpayers of New Jersey, will ultimately bear the burden through the operation of the market mechanism. In contrast, if dependent California residents are deprived of a cause of action and are forced to seek public assistance, the taxpayers of California will bear the burden. Furthermore, New Jersey's ability to reduce defendant's costs attributable to wrongful death dam-

age awards is limited, whether or not California law is applied to this case, because defendant (an interstate trucking firm) is subject to minimum insurance requirements under the Interstate Commerce Act. 49 U.S.C. § 10927, 49 C.F.C. § 1043.[2]

Finally, the court stated in *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976):

> "The process (choice of law) can accurately be described as ... accommodation of conflicting state policies, as a problem of allocating domains of law-making power in multi-state contexts—limitations on the reach of state policies as distinguished from evaluating the wisdom of those policies ... *Emphasis is placed on the appropriate scope of conflicting state policies* as opposed to the 'quality of those policies' ..." (citation omitted) 16 Cal.3d at 320–321, 128 Cal.Rptr. at 220, 546 P.2d at 724.

Defendant is a major interstate trucking firm doing business in many states, including California. The risks defendant creates while doing business throughout the country are the same no matter where it is incorporated. Neither defendant, nor the state of New Jersey, can reasonably expect defendant to be protected by New Jersey's relatively lax wrongful death statute regardless of where defendant's negligence results in an accident. New Jersey has apparently decided to attract industry by creating a relatively lax wrongful death statute at the cost of depriving some of the state's residents of damages attributable to defendant's negligence. New Jersey cannot reasonably expect to impose those costs on other states. To allow New Jersey to do so would create a classic free rider problem: New Jersey would get all the benefit of increased business activity while other states would share the burden created by a lax wrongful death statute.

---

2. Neither party addressed the issue regarding Oklahoma's interests in the damages aspect of this case. However, analysis of Oklahoma's interest in the area of wrongful death indicates that the California wrongful death statute should be applied. Oklahoma has no interest in limiting the damages for wrongful death in this case because the only defendant is not a resident of Oklahoma. *Hurtado v. Superior Court*, 11 Cal.3d 574, 111 Cal.Rptr. 106, 552 P.2d 666 (1974). Oklahoma does have an interest in having California's more stringent wrongful death statute applied to this case, because the application of a more burdensome (on defendant) unlawful death statute serves to deter negligent conduct. *Id.*

The Court holds that California's law and policy regarding *wrongful death* shall apply to this action.

In summary, the Court holds that the traffic laws of Oklahoma shall apply to this action for the purpose of determining whether a party was negligent *per se.* The Court further holds that the law of California shall apply to the issues regarding:

1) joint and several liability;

2) comparative negligence; and

3) recovery and standing to sue for wrongful death.