CHANNEL FLYING, INC. and Lon's Flying
Service, Petitioners,

v.

William P. BERNHARDT, Paul E. Lutts and
Dean K. Williams, d/b/a Southeast Sky-
ways, and the Alaska Transportation Com-
mission, Respondents.

No. 1082.

Supreme Court of Alaska.

March 10, 1969.

R. J. Annis, of Robertson, Monagle, Eastaugh & Annis, Juneau, for petitioners.

Allan A. Engstrom, Juneau, for respondent Southeast Skyways.

G. Kent Edwards, Atty. Gen., Juneau, and Roger A. McShea, III, Asst. Atty. Gen., Anchorage, for respondent Alaska Transp. Commission.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

This is an action by petitioners to permanently enjoin respondents from engaging in air commerce as an air-taxi operator with a base of operations at Juneau. Temporary authority to engage in such commerce had been granted by the Alaska Transportation Commission. On November 18, 1968, the superior court issued a temporary restraining order which restrained respondents from engaging in air commerce and prohibited the Alaska Transportation Commission from issuing any further authority to respondents. By stipulation of the parties the temporary restraining order was extended until December 9, 1968, or until the court ruled on petitioners' motion for a preliminary injunction, whichever occurred first.

A hearing was held on December 3, 1968. The court dissolved the temporary restraining order, but did not rule on

petitioners' motion for a preliminary injunction. Petitioners seek review of the action of the court in dissolving the temporary restraining order. They make two points: (1) that the hearing judge erred in not striking certain papers tardily filed by respondents in violation of Civil Rule 77(e)(2), and in not considering the respondents as having consented to the motion for a preliminary injunction under Civil Rule 77(f)(2); and (2) that the judge erred in not disqualifying himself from further consideration of this case when an affidavit of disqualification was filed pursuant to AS 22.20.022.

We have granted review because the question of the judge's continuing authority to act in this case after an affidavit for disqualification had been filed is of sufficient substance and importance as to justify deviation from the normal appellate procedure by way of appeal from a final judgment and to require the immediate attention of this court.[1]

Before deciding that question, we shall pass briefly upon petitioners' contention regarding the late filing of papers by respondents. Under Civil Rule 77(e)(2) respondents, as the parties opposing petitioners' motion for a preliminary injunction, were required to serve their papers in opposition to the motion "not less than 2 days prior to the hearing" of the motion. That was not done. The hearing was set for 9:00 a.m. on December 3, 1968, and respondents' papers in opposition to the motion for a preliminary injunction were not filed until the afternoon of December 2, less than two days prior to the hearing.

The sanction for failure to comply with the rule is provided by subdivision (f)(2) which states:

> When a party opposing a motion fails to comply with the provisions of subdivision (e)(2) of this rule, the court may consider this as a consent to the granting of the motion.

The word "may" makes the imposition of the sanction discretionary with the court. As in other cases where discretionary authority is involved, we shall interfere only where there has been an abuse of discretion. And we shall not find an abuse of discretion unless we are left with the definite and firm conviction on the whole record that the judge made a mistake in failing to impose a sanction for respondents' noncompliance with Civil Rule 77(e)(2).[2]

Proper objection was made to respondents' late filing of papers in opposition to petitioners' motion. When such objection has been made, the judge is faced with making a decision as to whether or not he will enforce the rule according to its sanction or grant the moving party additional time to meet new matter contained in the late filed papers. The point that must be recognized is that there can be subtleties to late filings which the judge cannot detect unless he is intimately familiar with all facets of the case as it has developed to that stage of the proceedings, which he ordinarily is not. For example, it is easy to inject a point or two in late filed matter which can subsequently become crucial and which, if not properly met, can result in a serious disadvantage to the other side.

When the trial judge is presented with the dilemma of either denying effect to late filed matter or continuing the hearing, he may be inclined toward going ahead with the hearing in order to preserve his calendar, and at the same time considering the late filed matter so as not to work an injustice on the party who made the late filing. In these circumstances the "injustice" which may be uppermost in the judge's mind would be that which might result to the party who made the late filing. The injustice to the other side may not be so apparent because of the sequence of events. But as we have pointed out, there may be injustice to the moving party and that should also be given consideration.

---

1. Supreme Ct.R. 24.

2. See Houger v. Houger, 449 P.2d 766 (Alaska 1969).

We believe this is the situation here. Among the late filed papers were the affidavit of respondent Bernhardt, and a supplemental order issued by respondent Alaska Transportation Commission. Both of these documents raised factual matters which petitioners would find it important to meet if they were to succeed in their efforts to obtain a preliminary injunction. Petitioners did not have the opportunity before the hearing to meet those matters because of the lateness of the filings by respondents. They should have been afforded that opportunity.

We shall not hold that the trial judge abused his discretion in refusing to enforce the sanction of Civil Rule 77(f) (2) by treating the late filings as a consent by respondents to the granting of petitioners' motion. But we do hold that in lieu of enforcing such sanction or refusing to consider the late filed papers, the judge ought to have at least continued the hearing and allowed petitioners reasonable opportunity to meet the points raised in the late filed papers. His failure to do so was a mistake, and thererfore an abuse of discretion. The case will be remanded for appropriate action by the trial judge in this regard prior to a hearing and decision of petitioners' motion for a preliminary injunction.

On the day of the hearing, December 3, 1968, petitioners filed an affidavit of the president of petitioner, Channel Flying, Inc., which stated that petitioners could not obtain a fair and impartial trial before the judge presiding at the hearing, Judge Gilbert. This affidavit was made and filed pursuant to AS 22.20.022 which in relevant part provides:

> (a) If a party or his attorney in a superior court action, civil or criminal, files an affidavit alleging under oath that he believes that he cannot obtain a fair and impartial trial, the presiding judge shall at once, and without requiring proof, assign the action to another judge

of that district, or if there is none, the chief justice of the supreme court shall assign a judge for the hearing or trial of the action. The affidavit shall contain a statement that it is made in good faith and not for the purpose of delay.

> \* \* \* \* \* \*

> (c) The affidavit shall be filed within five days after the case is at issue upon a question of fact, or within five days after the issue is assigned to a judge, whichever event occurs later, unless good cause is shown for the failure to file it within that time.

Judge Gilbert refused to disqualify himself under this statute. More than five days had elapsed since the matter had been assigned to him, and the judge was also of the opinion that more than five days had elapsed since the case was at issue upon a question of fact. It was the judge's view that the case was "at issue upon a question of fact," within the meaning of AS 22.20.022(c), at the time he signed a temporary restraining order on November 18, 1968, which was more than five days prior to the filing of the affidavit on December 3.

A case is at issue upon a question of fact when the parties to an action, through their pleadings, have raised some disputed question of fact, alleged to be a fact on one side and denied on the other, upon which the parties seek to obtain the decision of the court or jury.[3] The pleadings must be looked to in order to determine whether a case is at issue. In this case petitioners as plaintiffs filed a complaint seeking a permanent injunction. They alleged as a fact that respondent (defendant) Southeast Skyways was not fit nor able to engage in air commerce properly, that the service proposed by Southeast Skyways was not required by the public convenience and necessity, and that if Southeast Skyways were not enjoined from its allegedly unlawful operation in air com-

---

3. Village of Oak Park v. Eldred, 265 Ill. 605, 107 N.E. 145, 146 (1914); Whitney v. Borough of Jersey Shore, 266 Pa. 537, 109 A. 767, 769 (1920); Black's Law Dictionary, at 964–65 (4th ed. 1951).

merce, petitioners would suffer permanent, irreparable damage to their businesses by reason of diversion by Southeast Skyways of revenue, traffic and customers from respondents. At the time the temporary restraining order was signed on November 18, 1968, the factual matters alleged in petitioners' complaint had not been denied by any form of pleading from respondents. That was not done until December 2, 1968, when respondent, Southeast Skyways, filed its answer to petitioners' complaint, denying the truth of the allegation of the factual matters contained in the complaint. It was not until then that a question or issue of fact came into existence—that the case then was "at issue upon a question of fact," within the meaning of the judicial disqualification statute. And since the affidavit of disqualification was filed one day after the filing of the answer to the complaint, it was filed within five days after the case was at issue upon a question of fact and was therefore timely.

■ The next question is what effect the filing of the disqualification affidavit had. Petitioners contend that after such filing Judge Gilbert had no further power to act and therefore that his order dissolving the temporary restraining order was without effect.

The statute provides that when the requisite affidavit is filed

\* \* \* the presiding judge shall at once, and without requiring proof, assign the action to another judge of that district, or if there is none, the chief justice of

the supreme court shall assign a judge for the hearing or trial of the action.[4]

Unlike, for example, a Montana statute which provides that upon the filing of an affidavit of disqualification the judge shall be without authority to act further in the action,[5] our statute contains no such explicit provision. We believe, however, that the effect is the same. The only meaning that can be given to the requirement that the matter be assigned "at once and without requiring proof" to another judge, is that when a timely and proper affidavit is filed the judge concerned is at once disqualified from acting as a judge in the particular action or proceeding. When he is disqualified he no longer possesses the qualities necessary to act as a judge,[6] i. e., the qualities of power, capacity, fitness or competency to proceed further. In short, when a proper affidavit has been timely filed, the judge involved is without power or jurisdiction to take any further action in the proceeding. If this were not the intent and effect of the statute, then it would be meaningless and ineffective.

This situation is unlike that involved under a federal disqualification statute,[7] where the judge sought to be disqualified has the jurisdiction and power to pass upon the question as to whether he must withdraw from the case by reason of the allegations of his disqualification contained in the affidavit.[8] Under our statute, the judge possesses no such power; the disqualification is peremptory, i. e., it is at once decisive and conclusive and does not admit of any question.[9] Judge Gilbert was disqualified from acting further in this proceeding when

4. AS 22.20.022(a).

5. See State ex rel. Peery v. District Ct., 145 Mont. 287, 400 P.2d 648, 650 (1965).

6. Webster's New International Dictionary, at 752–53 (2d ed. 1960) defines "disqualify" as follows:
1. To deprive of the qualities necessary for any purpose; to render unfit.
2. To deprive of some power of privilege, as by positive restriction; to disable; to debar legally \* \* \*.

7. 28 U.S.C. § 144 (1964).

8. Green v. Murphy, 259 F.2d 591, 593 (3d Cir. 1958).

9. Black's Law Dictionary, at 1295 (4th ed. 1951) defines "peremptory" as follows:
Imperative; absolute; conclusive; positive; not admitting of question, delay, or reconsideration. Positive; final; decisive; not admitting of any alternative. Self-determined; arbitrary; not requiring any cause to be shown.

a proper affidavit of disqualification was timely filed on December 3, 1968, prior to the judge's action in dissolving the temporary restraining order.

 Respondents contend that AS 22.20.022 is invalid. Statutes providing for the peremptory disqualification of judges have been held unconstitutional as constituting an unlawful encroachment by the legislative branch upon the judicial branch of government and thereby violating the principle of separation of powers between these two branches of government.[10] But in each of the cases where disqualification statutes were held invalid, no affidavit of prejudice or bias was required. A simple challenge to a particular judge or a written request that a proceeding be heard by another judge was all that was necessary under the particular statutes involved.

This is a distinguishing feature. The cases which have held disqualification statutes invalid have recognized that where in a statute an affidavit of prejudice or bias is required in order to disqualify a judge, the statute would successfully withstand an attack on its validity.[11] The reason is that where no affidavit is necessary, a judge may be disqualified for good cause, bad cause—or no cause at all. But where an affidavit is required, the assertion of bias or prejudice under oath is at least some showing or an imputation of the fact that the judge is disqualified, and this is sufficient to save the statute from successful attack on constitutional grounds.[12] A litigant is entitled to a fair hearing before a tribunal which is disinterested, impartial and unbiased,[13] and a statute which affords him that right by providing some means for showing bias or lack of impartiality

does not offend the principle of separation of powers of government.

We hold that AS 22.20.022 is not unconstitutional on the grounds alleged. It does not permit disqualification for no cause at all. It requires an affidavit in which it must be alleged under oath that a party cannot obtain a fair and impartial trial before a particular judge. The meaning of such an allegation is that the judge will not be fair and impartial, which is another way of saying that he will be biased or prejudiced against the party seeking his disqualification. Such an allegation under oath constitutes a showing or is at least an imputation that the judge is disqualified. That is all that is required. The statute does nothing more than provide a reasonable method for assuring a fair trial for all litigants. It has been pointed out that similar statutes have been sustained in every state where they were considered by the courts, with the exception of Oklahoma.[14]

 Respondents also contend that AS 22.20.022 is invalid as violating the rule-making power of this court. The Alaska Constitution vests in the supreme court the authority to "make and promulgate rules governing practice and procedure in civil and criminal cases in all courts."[15] The legislature has no power to make rules, but only to change them by two-thirds vote.[16] The question here is whether the disqualification statute constitutes a rule governing practice and procedure in the courts which the legislature had no constitutional authority to make. The answer to that question depends on whether the subject matter of the statute is substantive or procedural. If it is substantive in nature it is a matter within legislative prerogative; if it is pro-

---

10. State *ex rel.* Bushman v. Vandenberg, 203 Or. 326, 276 P.2d 432, 280 P.2d 334, 350 (1955); State *ex rel.* Clover Valley Lumber Co. v. Sixth Judicial Dist. Ct., 58 Nev. 456, 83 P.2d 1031, 1034 (1938); Austin v. Lambert, 11 Cal.2d 73, 77 P. 2d 849, 853, 115 A.L.R. 849 (1938).

11. *Id.*

12. State *ex rel.* Clover Valley Lumber Co. v. Sixth Judicial Dist. Ct., 58 Nev.

456, 83 P.2d 1031, 1034 (1938); Austin v. Lambert, 11 Cal.2d 73, 77 P.2d 849, 851, 115 A.L.R. 849 (1938).

13. Nelson v. Fitzgerald, 403 P.2d 677, 679 (Alaska 1965).

14. Johnson v. Superior Ct., 50 Cal.2d 693, 329 P.2d 5, 8 (1958).

15. Alaska Const. art. IV, § 15.

16. *Id.*

cedural, it falls within the ambit of this court's rule-making power.

This statute does not merely regulate procedure. With or without it the particular action in court takes the same course. The statute rather creates and defines a right— the right to have a fair trial before an unbiased and impartial judge.[17] This is something more than merely prescribing a method of enforcing a right.[18] The main subject matter of the statute is substantive in nature and was within the province of the legislature to deal with. AS 22.20.022 is not invalid as an attempt to usurp the rule-making powers of this court insofar as it provides for a peremptory disqualification of a judge.

■ We have held that Judge Gilbert had no further authority to act in this case after a proper affidavit of disqualification was timely filed. This means he was without authority to dissolve the temporary restraining order. But this does not mean that the order is still in effect. On November 22, 1968, the parties stipulated that the temporary restraining order "shall continue in full force and effect through December 9, 1968, or until the court rules on the plaintiffs' motion for a preliminary injunction, whichever occurs first." Since the court has never ruled on the motion for a preliminary injunction, the meaning of the stipulation is that after December 9, 1968, the temporary restraining order no longer had any force and effect—it had expired.[19]

17. In Nelson v. Fitzgerald, 403 P.2d 677, 679 (Alaska 1965) we quoted with approval from Knapp v. Kinsey, 232 F.2d 458, 465 (6th Cir.), *cert. denied,* 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956), as follows:

> One of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case.

18. In Ware v. City of Anchorage, 439 P.2d 793, 794 (Alaska 1968) we said:

> [S]ubstantive law creates, defines and regulates rights, while procedural law

The order dissolving the temporary restraining order is reversed. The case is remanded for further proceedings consistent with the views expressed in this opinion, before a superior court judge to be designated by the chief justice pursuant to AS 22.20.022(a).

prescribes the method of enforcing the rights.

19. Absent the stipulation extending the temporary restraining order, it would have expired within 10 days after entry under the terms of Civil Rule 65(b), the pertinent part of which provides:

> Every temporary restraining order granted without notice shall * * * expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.