No. 14478

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

THE STATE OF MONTANA, UPON THE RELATION
OF MIKE GREELY, ATTORNEY GENERAL OF THE
STATE OF MONTANA, AND ROBERT L. DESCHAMPS
III, COUNTY ATTORNEY OF MISSOULA COUNTY,

Relators,

-vs-

THE DISTRICT COURT OF THE FOURTH JUDICIAL
DISTRICT, THE HONORABLES E. GARDNER BROWNLEE,
AND JACK L. GREEN, DISTRICT JUDGES: THE
DISTRICT COURT OF THE EIGHTH JUDICIAL DISTRICT,
THE HONORABLES TRUMAN BRADFORD, JOEL ROTH AND
WILLIAM CODER, DISTRICT JUDGES: AND THE DISTRICT
COURT OF THE THIRTEENTH JUDICIAL DISTRICT, THE
HONORABLES C. B. SANDE, ROBERT WILSON AND CHARLES
LUEDKE, DISTRICT JUDGES,

Respondents.

_____

ORIGINAL PROCEEDING:

For Appellants:

Hon. Mike Greely argued, Attorney General, Helena, Montana
Mike McCarter argued, Assistant Attorney General, Helena,
Montana

For Respondents:

Hon. E. Gardner Brownlee, Missoula, Montana
Hon. James B. Wheelis argued, Missoula, Montana
Hon. Jack L. Green argued, Missoula, Montana
Dexter Delaney argued, Missoula, Montana
Hon. H. William Coder argued, Great Falls, Montana
Hon. Joel G. Roth, Great Falls, Montana
Hon. Charles Luedke argued, Billings, Montana
Hon. Robert Wilson, Billings, Montana
Hon. C. B. Sande, Billings, Montana
Hon. Nat Allen, Roundup, Montana

For Amicus Curiae:

Hon. M. James Sorte argued, Wolf Point, Montana
Ed Cummings argued, Missoula, Montana
Howard Strause argued, Great Falls, Montana
C. W. Leaphart, Jr. argued, Helena, Montana
Gustafson and Keil, Conrad, Montana
Shelton C. Williams argued, Missoula, Montana

_____

Submitted: November 28, 1978

Decided: JAN 2 1979

Filed: JAN 1979

_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an amended application for supervisory control filed in this Court by the Attorney General and County Attorney of Missoula County seeking generally to insure prompt and speedy trials of criminal cases and more particularly seeking specific remedial action in various particulars relating thereto.

Following the filing of the amended application, this Court ordered notice to be given to the 56 county attorneys in this state, to the 29 district judges then serving this state, to the President and Executive Director of the State Bar of Montana, to the President of the Montana Trial Lawyers Association, to all public defenders of this state, to the presidents of all statewide organized Defense Attorneys Associations, and to the President of the Montana Judges Association. Answers, statements, memoranda of authorities and briefs were filed by the individual respondents and by numerous amici curiae.

On December 7, 1978, a hearing was held before this Court and oral arguments were presented in favor of and in opposition to said application for supervisory control at which time all parties and amici were given the opportunity for oral argument. Following the hearing, the application was taken under advisement by the Court. This opinion constitutes the decision of this Court on said application.

This Court's authority to entertain this application is found in the Judicial Article of the 1972 Montana Constitution. This Court is granted "general supervisory control over all other courts". Art. VII, section 2(2), 1972 Montana Constitution. The Supreme Court is empowered "to make rules governing . . . practice and procedure for all other courts . . ." subject to disapproval by the legislature of procedural rules so promulgated in either of the two sessions following promulgation. Art. VII, Section 2(3), 1972 Montana Constitution.

At the outset we note that the application for supervisory control is limited to criminal cases and court rules, practices and procedures of prosecutors, defense attorneys and judges relating thereto. However, many of the remedies sought directly affect the operation of the district courts in all areas of their operation including civil cases and administrative functions as well.

The first remedial action requested by relators is that this Court require employment of a court administrator in each of the Fourth, Eighth and Thirteenth Judicial Districts of this state and in any other judicial district where appropriate, granting such administrator authority to assign cases and control court business, trials and hearings. Relators complain that in these three judicial districts illnesses of district judges, current court rules, procedures and practices, and practices of defendants and their attorneys are causing significant delays in criminal cases; that many of the speedy trial problems are beyond the control of the individual judges; and that one of the district judges in each district is overburdened with disproportionate criminal and civil caseloads. Relators further contend that in the Eighth Judicial District there are approximately 24 cases which have not been or will not be tried within six months of arrest or filing; in the Thirteenth Judicial District, 10 such cases; in the Fourth Judicial District, Missoula County, 17 such cases. Relators identify and attribute these delays to independent control of trial schedules by district judges and resulting scheduling conflicts, including the scheduling of several different criminal trials on the same day; lack of summer trials in the Fourth and Eighth Judicial Districts and in Yellowstone County of the Thirteenth Judicial District; peremptory disqualification of district judges by defense attorneys; preselection of particular district judges by prosecutors creating disproportionate distribution of

criminal and civil caseloads among district judges; illness of district judges; granting continuances in criminal cases ex parte, without advance notice, and without date by many district judges throughout the state; and the inclusion of rural counties in districts having large Montana cities, specifically the Fourth, Eighth and Thirteenth Judicial Districts, resulting in speedy trial problems in the rural counties.

Many of these allegations and complaints are denied by respondents and amici.

We identify the problem areas in this manner: (1) an imbalance in caseloads among individual judges in multiple judge judicial districts, (2) independent and uncoordinated operation of their own courts by individual district judges in some multiple judge judicial districts, (3) archaic and unrealistic district court rules, practices and procedures in some district courts throughout the state, (4) illnesses of district judges, (5) peremptory disqualifications of district judges by prosecutors and defense attorneys, (6) preselection of district judges by prosecutors, (7) scheduling conflicts, (8) ex parte continuances without date in criminal cases, and (9) difficulties in furnishing satisfactory services in rural counties in some judicial districts.

In our view district judges in multiple judge judicial districts should first be given the opportunity to address and correct such of these problems as exist in their own districts under direction of this Court before resorting to the more drastic and expensive remedy of employment of local court administrators. This method has several advantages as we see it: (1) it enables elected judges to discharge their duties by putting their own houses in order, (2) it is considerably cheaper for the taxpayers, (3) it places authority, responsibility and accountability in those individuals elected to operate the system, and (4) it minimizes

- 4 -

the resistance of district judges to an appointed functionary controlling their operations and affairs.

Accordingly, we direct the appointment of a chief district judge in each multiple judge judicial district in this state. The purpose of this order is to centralize authority, responsibility and accountability in one individual. The duties of such chief district judge are as follows:

(1) In cooperation with the other district judges, to prepare and submit budgets for operation of the district court to the appropriate public officials.

(2) To equalize the workload of all district judges within the judicial district.

(3) To establish appropriate schedules and administrative rules to insure prompt and efficient servicing of all judicial business in the district.

(4) To employ and assign staff and secretarial personnel where appropriate.

(5) To perform such miscellaneous administrative duties as may be necessary or advisable in his discretion to insure a unitary and functioning district court operation in the judicial district.

(6) To submit an annual report to this Court on or before March 1 of each year commencing in 1980 covering the status and condition of the district court in the judicial district, its needs, and problem areas. Cf. Standard 9.2, pages 121-123, Courts Task Force, Montana Justice Project.

The chief district judge shall be selected by the district judges within each multiple judge judicial district of this state from among themselves by unanimous vote on or before April 1, 1979. The selection shall be certified in writing to the Clerk of the Montana Supreme Court by a written order signed by all district judges in each multiple judge judicial district on or before said

date. Whenever the district judges fail to make a selection on or before said date or certify such selection to the Clerk of the Supreme Court as provided herein, the Chief Justice of the Montana Supreme Court shall appoint one of the district judges as chief district judge and shall certify such appointment by written order filed with the clerk of this Court and of the district court in each county within the judicial district.

The district judge selected or appointed as chief district judge shall serve in that capacity until he resigns, ceases to be a district judge in the judicial district, or is terminated, whichever occurs first. In judicial districts served by three or more district judges, such termination shall occur when the other district judges unanimously agree to such termination in writing and notify the Chief Justice; in judicial districts containing two district judges such termination shall occur where both district judges agree to such termination in writing and notify the Chief Justice.

Whenever a vacancy occurs from any cause, the district judges in each multiple judge judicial district shall select one of their number to be chief district judge within 30 days of the occurrence of the vacancy. If they fail to make such selection within 30 days, the Chief Justice of the Montana Supreme Court shall appoint a chief district judge. The provisions on certification and filing applicable to the initial selection of a chief district judge shall apply to any subsequent vacancy.

The second remedy sought by relators is the elimination of peremptory disqualification of district judges, the limiting of disqualifications of district judges for cause, and the prevention of preselection of district judges by prosecutors.

We decline to eliminate peremptory disqualification of district judges or to limit disqualification of district judges for cause at this time. The present Montana Court Rule on dis-

qualification and substitution of district judges was promulgated by the Montana Supreme Court and became effective on March 1, 1978. This rule amended and superseded section 93-901, R.C.M. 1947, the former procedure. It provides for one peremptory disqualification or substitution of judge by the prosecution and one by the defendant in a criminal case with an unlimited right of disqualification for cause. For text of rule, see 34 St.Rep. 26. The purpose of the rule is to guarantee both the prosecution and the defendant a fair trial before an impartial district judge. The rule also covers disqualifications in civil cases. See the following cases for the purpose, history and development of the disqualification rule in Montana: State ex rel. Anaconda Copper Mining Co. v. Clancy (1904), 30 Mont. 529, 77 P. 312; In re Woodside-Florence Irr. Dist. (1948), 121 Mont. 346, 194 P.2d 241; State ex rel. Peery v. Dist. Ct. (1965), 145 Mont. 287, 400 P.2d 648; State ex rel. OB-GYN Group v. Dist. Ct. (1972), 159 Mont. 1, 494 P.2d 931; State ex rel. Lane v. Dist. Ct. (1975), 167 Mont. 53, 535 P.2d 174.

We recognize that the right of peremptory disqualification of district judges creates delays in the trial of both criminal and civil cases in Montana. It causes calendaring and scheduling problems for district judges, the parties and their attorneys. It interferes with the normal and routine operation of the district courts. Nonetheless we hold that the paramount and overriding consideration is the right to a fair trial before an impartial district judge. We consider that improvements in the present system lie in the area of correction of abuses in the exercise of peremptory disqualifications rather than elimination of the right.

A principal area of abuse in the exercise of the right of peremptory disqualifications concerns mass disqualifications of an individual district judge in every criminal case by an individual

attorney, law firm or staff. Such practice is not confined to defense attorneys but encompasses some county attorneys and their staffs as well. We are aware of instances where this has occurred, but we are unclear concerning how widespread the practice is and its impact on the operation of the district courts. Accordingly, we direct the Attorney General to document the extent of this practice in criminal cases by both county attorneys and defense attorneys in every district court in Montana over the last five years, 1974 through 1978, and certify the results of this documentation to this Court, together with his recommendations on appropriate remedial action.

We find no basis whatever to limit or restrict the right of either the prosecution or defense to disqualify a district judge for cause in any case. The right to a fair trial before an impartial judge is the cornerstone of the American and Montana court systems. Its values transcend operational problems in the court system.

Prosecutors' preselection of district judges in multiple judge judicial districts is as old as the hills both in Montana and nationwide. Any rotation system for case filings in such district courts can easily be circumvented to enable filing before a particular judge. The prosecutor controls the time of filing a criminal charge and thus controls selection of the district judge before whom the criminal case is filed. Disqualification rights, both peremptory and for cause, constitute an adequate remedy whereby defendant can insure himself a fair trial before an impartial judge.

Relators request this Court to establish a uniform rule for all district courts in Montana providing that no hearing or trial date in a criminal case be vacated or continued without notice to the county attorney and without providing a new date for hearing or trial. This matter is under study at the present

time but no determination has yet been made due to limitations of time and resources of this Court. In the meantime we recommend that district judges decline to grant continuances in criminal cases to either defense attorneys or prosecutors ex parte and without notice to opposing counsel in the absence of exigent and compelling circumstances.

Relators further request this Court to provide for the adoption of pretrial omnibus procedures similar to those used by the federal courts in the state district courts of Montana. We observe that there are substantial differences in the structure, organization, operation, types of cases, personnel, and resources of federal district courts vis-a-vis Montana district courts. We likewise observe a need in Montana district courts for a formalized rule detailing a practice and procedure for an omnibus hearing or hearings to schedule, resolve and determine pretrial motions, applications and requests, including the calendaring and scheduling of the trial.

Accordingly, we order and direct each district court in each judicial district to establish by court rule an omnibus hearing in all criminal cases and provide a formalized practice and procedure relating thereto as indicated above. Such court rule shall provide for omnibus hearings in all counties within each judicial district. Such omnibus hearing rule shall be promulgated and established by the district court in each of Montana's 19 judicial districts on or before April 1, 1979, and a copy of the same filed with the Clerk of the Supreme Court. We request the Montana Judges Association at their next meeting to address the advisability or nonadvisability of establishing a uniform rule of statewide application on this subject, their reasons therefor, and their recommendations.

Relators further request the assistance of this Court in recommending and supporting legislation rearranging and realign-

ing the Fourth, Eighth and Thirteenth Judicial Districts. This Court has already recommended and will support legislation creating a joint legislative committee to study the number and composition of Montana's judicial districts and the number of district judges required and necessary to service the judicial needs of the State of Montana. This is a legislative prerogative under the Constitution and statutes of this state. We stand ready to assist the legislature in this task, if and when called upon.

Relators next request this Court to establish rules and procedures for interim assignment of district judges to deal with heavy caseloads in individual judicial districts. We consider present statutes, procedures and practices sufficient in this area without further revision except in one area.

Present statutes empower the Chief Justice, upon request of the district judge or judges involved, to call a consenting retired judge to active service but make no provision for compensation for his services. This Court has recommended to the 46th Legislative Session an amendment providing for the payment to a retired judge called to active service in the amount of the difference between his retirement benefits and the salary of an active district judge for the period of such retired judge's active service.

Relators also request this Court to establish Sentencing Panels in multiple judge judicial districts to eliminate disparity of sentences imposed on convicted defendants. We consider this request impractical and unworkable; that it holds no promise of significant improvement in the sentencing of convicted criminals; and that it invades the independence and statutory prerogatives of the sentencing judge.

At the outset we observe that Montana statutes provide for criminal sentencing by a single district judge. Section 95-2212, R.C.M. 1947, now section 46-18-103, MCA. Prior to pronounc-

- 10 -

ing sentence, the sentencing judge studies the presentence report compiled by a probation officer. Section 95-2203, R.C.M. 1947, now section 46-18-111, MCA. The sentencing judge usually conducts a presentence hearing. The sentencing judge cannot sentence on the basis of private out-of-court information, communications, or investigation. State v. Kuhl (1961), 139 Mont. 536, 366 P.2d 347; State v. Simtob (1969), 154 Mont. 286, 462 P.2d 873; State v. Stewart (1977), ____Mont.____, 573 P.2d 1138, 34 St.Rep. 1475.

The defendant has the right to have his sentence reviewed for equity, disparity or considerations of justice by the Sentence Review Board. Sections 95-2501 to 95-2504, R.C.M. 1947, now sections 46-18-901 to 46-18-905, MCA; State v. Simtob, supra. He has the right to appeal his sentence to the Montana Supreme Court to determine its legality. State v. Simtob, supra.

We consider this system sufficient to provide a reasonable approach to any problem of disparity in criminal sentences. We observe that criminal sentences depend as much on considerations relating to the criminal being sentenced as to the crime of which he was convicted. Each individual's background, attitude, past criminal record and many other factors must be weighed and assessed. To require a Sentencing Panel of two or more district judges to do this, in or out of court, appears to us to require much more than is needed; to unreasonably trespass on the operation of the district courts and the district judges; and to raise manifold constitutional and statutory issues that might well take years to resolve at the expense of the taxpayers. We decline the requested relief.

Finally, relators request such other and further relief as this Court may deem advisable. None is suggested. Until such time as the statewide information system of this Court is fully perfected or other situations come to this Court's attention

- 11 -

that require immediate remedial action, no further relief will be granted.

_Frank I. Haswell_
Chief Justice

We concur:

_Gene L. Daly_

_John Conway Harrison_

_Daniel J. Shea_

_John C. Sheehy_
Justices

- 12 -